# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| WENDY CAROL STRANGE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:16-CV-532-JEM |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on December 23, 2016, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 18], filed on May 12, 2017. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On August 21, 2017, the Commissioner filed a response, and on September 5, 2017, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## I.  Procedural Background

On April 23, 2013, Plaintiff filed an application for benefits alleging that she became disabled on April 22, 2013. Plaintiff's application was denied initially and upon reconsideration. On April 27, 2015, Administrative Law Judge ("ALJ") John K. Kraybill held a hearing at which Plaintiff, with an attorney representative, a medical expert, and a vocational expert ("VE") testified. On June 19, 2015, the ALJ issued a decision finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2016.

2. The claimant has not engaged in substantial gainful activity since April 22, 2013, the alleged onset date.

3. The claimant has the following severe impairments: morbid obesity, obstructive sleep apnea, cardiac issues, and hand pain.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 461.967(b), lifting 10-20 pounds occasionally and 5-15 pounds frequently. The claimant is limited to standing and/or walking for a total of about four hours and sitting six hours in an eight-hour workday. She is limited to occasional climbing ramps/stairs, no climbing ladders, ropes, or scaffolds, occasional stooping, crouching, and crawling. The claimant is limited to frequent hand manipulations. Claimant is to avoid temperature extremes, heavy moving machinery, vibrations, and unprotected heights.

6. The claimant is able to perform past relevant work as a credit clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability from April 22, 2013, through the date of the decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and

indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him or her from doing her previous work, but considering his or her age, education, and work experience, it must also prevent him or her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's Residual Functional Capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The

RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001); *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski*, 245 F.3d at 889 ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**III.     Analysis**

Plaintiff argues that the ALJ's assessment of Plaintiff's ability to work was not adequately supported and not based in the evidence of record. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

5

A.  Symptom Evaluation

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p, in effect at the time of the ALJ's opinion, provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p, 1996 WL 374186, at *6 (Jul. 2, 1996).

In this case, the ALJ concluded that Plaintiff's statements about her symptoms were not entirely credible in because she failed to follow her doctor's recommendations. When considering non-compliance with treatment as a factor in determining whether a claimant's statements regarding her symptoms are credible, an ALJ is also required make a determination about whether non-compliance with treatment is justified and develop the record accordingly. *See* SSR 96-7p at *7; *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first

6

explore the claimant's reasons for the lack of medical care before drawing a negative inference. . . . The claimant's 'good reasons' may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p).

In particular, the ALJ pointed to several specific failures to follow physician directions: Plaintiff did not wear braces on both hands, quit smoking, or use a C-PAP machine for her sleep apnea. However, as Plaintiff argues, she testified that she wears the brace on her right hand whenever she experiences cramping or numbness, but does not always wear it on her left hand because it increases her pain and stiffness rather than limiting it. AR 44, 51. Similarly, Plaintiff indicated that she did not use the C-PAP because she did not have problems sleeping through the night and woke feeling refreshed, AR 42, explanations that the ALJ did not address in his opinion. Likewise, "it is extremely tenuous to infer from the failure to give up smoking that the claimant is incredible when she testifies that the condition is serious or painful." *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000); *see also Rousey v. Heckler*, 771 F.2d 1065, 1069-70 (7th Cir. 1985). Even people with disorders caused by smoking may "continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the product impacts their ability to stop. This is an unreliable basis on which to rest a credibility determination." *Shramek*, 226 F.3d at 813.

The ALJ also found Plaintiff to be less than credible because a doctor treating her cardiac condition advised her to exercise several times per week, as tolerated. He does not include the type of exercise he supposes Plaintiff to be capable of doing, not does he explain how a recommendation

7

that Plaintiff attempt to exercise is inconsistent with her statements about the limitations in what kind of movements she is able to do, or how frequently. *See, e.g., Perkins v. Astrue*, 498 F. App'x 641, 644 (7th Cir. 2013) ("[T]he ALJ noted [the plaintiff]'s comment to a nurse that he walks a mile daily, but the ALJ again did not explain how his ability to walk one mile is inconsistent with the limitations that he claimed, or consistent with standing or walking for 6 hours of an 8–hour workday."); *Carradine v. Barnhart*, 360 F.3d 751, 755–56 (7th Cir. 2004) ("[The plaintiff] does not claim to be in wracking pain every minute of the day. When she feels better for a little while, she can drive, shop, do housework. It does not follow that she can maintain concentration and effort over the full course of the work week. The evidence is that she cannot. The weight the administrative law judge gave to [the plaintiff]'s ability to walk two miles was perverse: not only is it a form of therapy, but it is not a form of therapy available at work.").

The ALJ's other reasons for finding Plaintiff to be less than credible are similarly problematic. The ALJ disbelieved Plaintiff's reports of her limitations because she asked her physician to write a note describing her physical difficulties, despite being required to solicit relevant evidence from medical professionals. *See, e.g., Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("The claimant bears the burden of submitting medical evidence establishing her impairments and her residual functional capacity. How else can she carry this burden other than by asking her doctor to weigh in?") (citing 20 C.F.R. §§ 404.1512(a), (c), 404.1513(a), (b), 404.1545(a)(3)). The ALJ also concluded that there were inconsistencies in Plaintiff's reported use of her hands. In her function report, completed in 2013, Plaintiff stated that she could wash dishes, dust, do laundry, and prepare meals, abilities that the ALJ found exceeded her activities as reported at the hearing. Plaintiff argues that the ALJ failed to consider that Plaintiff's degenerative hand

condition may have gotten worse in the intervening two years. *See, e.g., Roddy*, 705 F.3d at 637 ("The term 'degenerative' implies that [the [plaintiff] suffers from a condition that will get worse over time . . . The ALJ did not even discuss [the physician]'s explanation that [the plaintiff]'s condition had deteriorated and her pain had increased . . .").

A similar failure of analysis is evident in the ALJ's treatment of Plaintiff's daily activities. Although he stated that Plaintiff's ability to complete some basic activities of daily living "does not directly coincide with what the claimant is capable of performing 40 hours a week," he also concluded that the "activities are consistent with a residual functional capacity for light exertional level work." Not only are these two statements inconsistent with each other, but it is not apparent how Plaintiff's ability to slowly wash some dishes or do laundry is equivalent to lifting 15 pounds frequently, walking for four hours, and occasionally crouching and crawling during a work day. It appears that the ALJ failed to take into account, for example, "[t]he individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms." SSR 96-7p at *8. *See also, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *Punzio*, 630 F.3d at 712 ("[The Plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a

9

claimant's limitations in performing household activities. The ALJ here ignored [the plaintiff]'s numerous qualifications regarding her daily activities" and methods of coping with pain); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

      B.      <u>Combination of Impairments</u>

Plaintiff argues that the ALJ also failed to consider the combination of Plaintiff's impairments and to incorporate her obesity into the RFC. "Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

The record reflects that Plaintiff has a BMI of between 49.51 and 50.91, which is level III or "extreme" obesity, "representing the greatest risk for developing obesity-related impairments." SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). Social Security Ruling 02-1p requires an

ALJ to consider obesity as an impairment and the exacerbating effects of a claimant's obesity on her other conditions when arriving at the RFC assessment, even if the obesity is not itself a severe impairment. *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008); *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (finding that, even if obesity is not a severe impairment itself and "merely aggravates a disability caused by something else[,] it still must be considered for its incremental effect on the disability"). Ruling 02-1p provides that in evaluating obesity in assessing RFC, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p, at *6. Further, Ruling 02-1p explains that an ALJ's RFC determination must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *Id.* (citing SSR 96-8p). On remand, the ALJ is directed to consider the combination of Plaintiff's impairments, even those that are not severe in isolation, and to specifically address the impact her obesity has on her other impairments.

C.   Past Relevant Work

Plaintiff argues that the ALJ's determination that Plaintiff can return to her past relevant work is not based on substantial evidence. The Commissioner argues that the ALJ properly compared Plaintiff's RFC with the requirements of Plaintiff's past work.

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record"); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir.

11

2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543.

The ALJ concluded that Plaintiff is capable of performing past relevant work as a credit clerk. He noted that it is sedentary exertional level work in the economy but light as Plaintiff performed it, and wrote that the VE testified that someone with Plaintiff's RFC could perform work as a credit clerk both as described in the Dictionary of Occupational Titles and as performed by Plaintiff, although, as Plaintiff argues, the VE did not testify as to the specific physical demands of her past work. A new RFC and credibility assessment will need to be determined based on the discussion above. On remand, the ALJ is directed to thoroughly question the VE about available work and assess her ability to perform specific necessary tasks. *See, e.g., Cohen v. Astrue*, 258 F. App'x 20, 28 (7th Cir. 2007) ("[A]n ALJ cannot describe a previous job in a generic way, e.g., "sedentary," and on that basis conclude that the claimant is fit to perform all sedentary jobs without inquiring into any differences in what the job requires while sitting."); *Smith v. Barnhart*, 388 F.3d 251, 253 (7th Cir. 2004) ("The issue is not whether the applicant for benefits can return to the precise job he held, which is hardly likely to have been kept open for him, but whether he can return to a 'job' he held that exists at other employers. However, the job must not be described so broadly as to encompass a range of physical and mental abilities some of which the applicant may not have; and that is the case if the job is described merely as 'sedentary work.'").

**IV.    Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief

in Support of Reversing the Decision of the Commissioner of Social Security [DE 18] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 21st day of February, 2018.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record